**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ethel Marie Simanson, | No. CV-20-02233-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Ethel Marie Simanson's application for disability insurance benefits under the Social Security Act (the "Act"). Plaintiff filed a Complaint on November 20, 2020, seeking judicial review of the denial of benefits. (Doc. 1). The Court has reviewed the parties' briefs (Docs. 29, 34, 35) and the administrative record (Doc. 24, "R.") and now affirms the Administrative Law Judge's ("ALJ") decision.

**I.   BACKGROUND**

Plaintiff filed an application for Title II Disability Insurance Benefits in September 2016, alleging a disability beginning on December 31, 2001. (R. at 381.) Plaintiff's application was denied initially on December 9, 2016 (R. at 239), and again upon reconsideration (R. at 247). Plaintiff appeared before the ALJ at a hearing in November 2019 (R. at 210), and the ALJ denied Plaintiff's application in February 2020. (R. at 25.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the agency's final decision.  (R. at 1.) Following this unfavorable decision, Plaintiff filed the pending appeal.

After considering the medical evidence and opinions, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from December 31, 2001, the alleged onset date, to March 31, 2008, the date last insured. (R. at 28.) The ALJ found that Plaintiff had the following severe impairments: left shoulder degenerative joint disease and rotator cuff syndrome, status post capsular release and revision, and rheumatoid arthritis. (*Id.*) At step three of the five-step sequential analysis, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. at 29.)

In assessing Plaintiff's residual functional capacity, the ALJ found that Plaintiff's symptom testimony was not entirely consistent with the evidence of record. (R. at 30–34.) The ALJ subsequently assigned little weight to each of the medical opinions, including an opinion from Plaintiff's treating rheumatologist, Dawn Ann Hnat, M.D. (R. at 35–38.) Ultimately, the ALJ determined that Plaintiff had the residual functional capacity to perform light work, except Plaintiff "could never crawl or climb ladders, ropes, or scaffolds; with the left arm, could occasionally reach overhead and frequently reach in all other directions; could frequently handle and finger; and could not tolerate exposure to extreme cold, vibration, or hazards such as unprotected heights or moving machinery." (R. at 29.) Relying on the testimony of a vocational expert, the ALJ determined that Plaintiff could perform past relevant work as an assembly line worker or, alternatively, could perform jobs such as information clerk, electronics worker, or office helper. (R. at 39–40.) If Plaintiff could only handle and finger occasionally, Plaintiff would also be able to perform the jobs of counter clerk, usher, or information clerk. (R. at 40–41.) Consequently, the ALJ concluded that Plaintiff was not disabled. (*Id.*)

## II.     LEGAL STANDARD

A district court only reviews the issues raised by the party challenging an ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by

substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence requires "more than a mere scintilla but less than a preponderance" and should be enough evidence "as a reasonable mind might accept as adequate to support a conclusion." *Id*. (*quoting Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). An ALJ's decision should be upheld if "evidence is susceptible to more than one rational interpretation," but a district court should "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id*. (quotations and citations omitted). Even when the ALJ commits legal error, the reviewing court must uphold the decision where the error is harmless. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). "An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Id.* (citations and internal quotation marks omitted).

To determine whether a claimant is disabled under the Act, the ALJ must follow a five-step analysis. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). First, the ALJ must determine whether a claimant is participating in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id*. Second, the ALJ determines if a claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled. *Id.* Third, the ALJ determines whether the claimant's impairment meets or equals a listing in Appendix 1 of Subpart P of 20 C.F.R. § 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant disabled, and the inquiry ends. *Id*. If the ALJ must proceed to step four, the ALJ determines whether the claimant's RFC allows the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled. *Id*. If the ALJ must proceed to step five, the ALJ determines whether the claimant's RFC allows the claimant to perform other work. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not

disabled. *Id*. If not, the claimant is disabled. *Id*.

**III.    DISCUSSION**

Plaintiff raises two arguments: (1) the ALJ erred in rejecting Dr. Hnat's opinion, and (2) the ALJ's decision arose from an unconstitutional administrative process. (Doc. 29 at 2).

**A.    Dr. Hnat's Opinion**

Plaintiff first argues that the ALJ failed to provide specific and legitimate reasons to reject the opinion of her treating rheumatologist, Dawn Ann Hnat, M.D. (Doc. 29 at 4.)

Plaintiff filed her claim on August 15, 2016. (R. at 25.) For disability benefit applications filed prior to March 27, 2017, Social Security regulations classify acceptable medical sources into three types: (1) treating physicians (who treat a claimant), (2) examining physicians (who examine but do not treat a claimant), and (3) non-examining physicians (who do not examine or treat a claimant). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, opinions from treating physicians are entitled to greater weight than those from examining physicians, while non-examining physician opinions receive the least weight. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). If certain evidence contradicts a treating or examining physician's opinion, the ALJ must provide "specific and legitimate reasons supported by substantial evidence" for rejecting that physician's opinion. *Lester*, 81 F.3d at 830–31.

In April and June 2011, Dr. Hnat wrote three letters on Plaintiff's behalf. (R. at 549–51). On April 15, Dr. Hnat stated that she had cared for Plaintiff's rheumatoid arthritis since June 30, 2008. (R. at 549.) Dr. Hnat had advised Plaintiff to stop working on February 3, 2010, because Plaintiff's work as a food server/demonstrator aggravated her arthritis—namely, repetitive work activities such as "reaching, cutting, serving, lifting, and prolonged standing caused inflammation in all joints." (*Id*.) On June 20, Dr. Hnat opined that Plaintiff was "completely disabled and unable to engage in gainful employment due to the arthritis" that had caused severe fatigue and painful, swollen joints. (R. at 551.) Dr. Hnat again stated that Plaintiff's work aggravated her arthritis.

(*Id.*) On June 22, Dr. Hnat opined that Plaintiff was disabled, and she did not expect to release Plaintiff to a return to work for at least one year. (R. at 550.)

The ALJ assigned little weight to Dr. Hnat's opinions, noting that Dr. Hnat began treating Plaintiff in June 2008, after the date last insured of March 31, 2008. (R. at 26, 37.) The ALJ found no objective medical evidence prior to the date last insured to support Dr. Hnat's statements and assessed limitations. (R. at 38.) Moreover, the ALJ found no indication that Dr. Hnat considered the objective evidence prior to the date last insured when forming her opinions. (*Id.*) Even so, the ALJ found that evidence after the date last insured indicated that Plaintiff was treated with medication for rheumatoid arthritis-related pain, and her symptoms resolved with medications such as Mobic and methotrexate. (R. at 38, 1400–03, 1421–24, 1440–43, 1489). Accordingly, the ALJ determined that the evidence of record did not support Dr. Hnat's opinions. (*Id.*)

The ALJ provided sufficiently specific and legitimate reasons to reject Dr. Hnat's opinions. Most notably, where a physician only examined a claimant after the date last insured and there is conflicting medical evidence, an ALJ may reject the physician's opinion. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998). Even considering the medical evidence after the date last insured, an ALJ may discredit an opinion where the impairments are effectively controlled with medication. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be effectively controlled with medication are not disabling."). The ALJ cited to copious evidence in the record that showed Plaintiff tolerated treatment drugs well (including Mobic and methotrexate) and her symptoms improved. (R. at 1421–24, 1440–43, 1489.) For example, on August 8, 2008, Dr. Hnat wrote that Plaintiff "feels the Mobic has been very helpful with significant improvement in her joint pain and swelling." (R. 1443.) Additionally, in November 2008, Dr. Hnat noted that Plaintiff took methotrexate "for 1 month with resolution of all pain" though some pain had returned. (R. 1489.) Despite Plaintiff's contention that her condition worsened after March 2008, the Ninth Circuit has stated that "[a]ny deterioration in [a claimant's] condition subsequent to [the date last

- 5 -

insured] is, of course, irrelevant." *Waters v. Gardner*, 452 F.2d 855, 858 (9th Cir. 1971).[*]

Plaintiff further argues that the ALJ was required to consider six factors under 20 C.F.R. § 404.1527(c) but erred by only considered supportability. (Doc. 29 at 8–9.) The ALJ, however, stated that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527." (R. at 30.) This Court has determined that such a statement is sufficient to meet the ALJ's burden, and "[c]onsideration is all that is required." *See, e.g., Polk v. Comm'r of Soc. Sec. Admin.*, No. CV-19-04705-PHX-JAT, 2020 WL 3969825, at *6 (D. Ariz. July 14, 2020); *Proctor v. Comm'r of Soc. Sec. Admin.*, No. Cv-19-05503-PHX-MTL, 2020 WL 6796767, at *14 n.4 (D. Ariz. Nov. 19, 2020). Thus, the ALJ complied with 20 C.F.R. § 404.1527(c), and the ALJ did not err in assigning little weight to Dr. Hnat's opinions.

### B. Constitutionality of the Administrative Process

Plaintiff next argues that the Commissioner of the Social Security Administration ("Commissioner") was unconstitutionally appointed under 42 U.S.C. § 902(a)(3)—a provision limiting the President's ability to remove the Commissioner without cause—and therefore had no authority to delegate decision-making power to the ALJ in her case. (Doc. 29 at 10–12.) Accordingly, Plaintiff contends that the Court must remand for a new hearing and decision. (*Id.*)

The Supreme Court recently held that restrictions on a President's ability to remove an agency director violate the separation of powers and therefore create an unconstitutional agency structure. *Seila Law LLC v. CFPB*, --- U.S. ---, 140 S. Ct. 2183 (2020); *Collins v. Yellen*, --- U.S. ---, 141 S. Ct. 1761 (2021). If a plaintiff wishes to seek a remedy on this basis, the plaintiff must show (1) that she has suffered "compensable harm" due to the unconstitutional removal restriction and (2) that an officer subject to the unconstitutional removal provision caused said harm. *Collins*, 141 S. Ct. at 1787–89.

---

[*] Plaintiff contends that certain evidence after the date last insured supports a finding of disability. Even had the ALJ been required to consider evidence beyond the date last insured, where the evidence is "susceptible to more than one rational interpretation[,]" the Court will affirm the ALJ's conclusion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Defendant concedes that 42 U.S.C. § 902(a)(3) violates the separation of powers. (Doc. 34 at 3.) Nevertheless, Defendant argues that the unconstitutionality of the provision is not dispositive as Plaintiff has not shown that she suffered the compensable harm required under *Collins*. (*Id*. at 4, 8.) In addition, Defendant contends that the ALJ presiding over Plaintiff's case was appointed by an *Acting* Commissioner, removable at-will. (*Id*. at 4, 6–7.) Without an appointment subject to for-cause removal protections, the unconstitutional removal provision therefore had no impact on the ALJ's appointment. (*Id*.) Accordingly, Defendant argues that there was no nexus between Plaintiff's alleged harm and the removal provision. (*Id*.)

Regardless of whether *Collins* applies to Acting Commissioners, Plaintiff has failed to show compensable harm connected to the unconstitutional removal provision. This Court has previously rejected the very constitutional challenge that Plaintiff raises. *Nudelman v. Comm'r of Soc. Sec. Admin.*, No. CV-20-08301-PCT-MTL, 2022 WL 101213, at *13 (D. Ariz. Jan. 11, 2022); *see also Jordan v. Comm'r of Soc. Sec. Admin.*, No. CV-21-08022-PCT-DGC, 2022 WL 842902, at *2–4 (D. Ariz. Mar. 22, 2022); *Nichols v. Comm'r of Soc. Sec. Admin.*, 2022 WL 909435, at *2–3 (D. Ariz. Mar. 29, 2022); *Campbell v. Comm'r of Soc. Sec. Admin.*, no. Cv-20-02048-PHX-JAT, 2022 WL 34677, at *3 (D. Ariz. Jan. 4, 2022).

In any event, *Selia Law* held that the removal provision is "severable from other statutory provisions bearing on the [agency's] authority[,]" and "[t]he agency may therefore continue to operate[.]" 140 S. Ct. at 2192. The Court futher emphasized this holding in *Collins*, explaining that where the agency head was properly appointed, "the unlawfulness of the removal provision does not strip the [agency head] of the power to undertake the other responsibilities of his office," and there was "no reason to regard any of the actions taken by the [agency] . . . as void." 141 S. Ct. at 1787–88 & n.23.

A plaintiff is only entitled to relief where violation of the removal provision has inflicted him or her with compensable harm. *Id*. at 1788–89. The Court provided two examples: (1) where the President had attempted to remove an agency head "but was

prevented from doing so by a lower court decision holding that he did not have 'cause' for removal"; or (2) where the President had "express[ed] displeasure" with actions taken by an agency head and had asserted that he would remove the agency head "if the statute did not stand in the way." *Id.* at 1789.

Plaintiff's case was heard by an ALJ while Andrew Saul was the Social Security Commissioner. *See* Soc. Sec. Admin., Historical Information, https://www.ssa.gov/history/commissioners.html (noting that Mr. Saul served as Commissioner from June 17, 2019 until July 9, 2021) (last visited April 18, 2022); *see also Sean E. M. v. Kijakazi*, No. 20-CV-07295-SK, 2022 WL 267406, at *2 & n.2 (N.D. Cal. Jan. 28, 2022) (taking judicial notice of this fact). Plaintiff does not contend that the President "sought to remove . . . Commissioner Saul or that either a Commissioner or the President was involved [in] or even aware of [his] disability benefits claim. Therefore, he [has] 'failed to show how or why § 902(a)(3)'s removal clause possibly harmed him.'" *Sean E. M.,* 2022 WL 267406, at *5. Instead, Plaintiff here contends that her harm—denial of benefits—resulted from the unconstitutional agency structure and the Commissioner's improper delegation to the ALJ of fact-finding and decision-making abilities. (Doc. 29 at 12.)

This Court has previously rejected claims that there is a "but-for causal chain" linking the denial of a claimant's benefits to § 902(a)(3)'s removal restriction. *Nudelman*, 2022 WL 101213, at *13 (finding the plaintiff's argument that "there exists a but-for causal chain linking his denial of benefits and § 902(a)(3)" to be "insufficient"); *see also Campbell*, 2022 WL 34677, at *3–4; *Nichols*, 2022 WL 909435, at *2–3. The same is true here. Here, "there is no immediately apparent connection" between the denial of Plaintiff's claim and § 902(a)(3). Accordingly, her argument fails.

Plaintiff adds in her reply that the unconstitutional removal restriction causes harm by limiting the President's discharge of his executive powers, stripping the President of his oversight, and depriving the people of electoral accountability. (Doc. 35 at 8–9.) The Court, however, finds that such a generalized harm to electoral accountability is not

sufficiently compensable harm to Plaintiff. Accordingly, Plaintiff has failed to show a sufficient nexus between the removal provision and her alleged harm.

In her reply, Plaintiff makes one final argument that *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), controls her case. (Doc. 35 at 4–5). In contrast to the single-layer removal protection in *Collins* and *Seila Law*, the *Free Enterprise* court evaluated two layers of for-cause removal protection and found that such a structure violated the separation of powers. 561 U.S. at 492. Regardless, in raising this issue for the first time in her reply and failing to explore it in her opening brief, Plaintiff has waived this argument. *See Eberle v. Anaheim*, 901 F.2d 814, 817–18 (9th Cir. 1990) (declining to consider an issue raised for the first time in a reply, where an issue had not been fully explored); *Jackson v. Kijakazi*, No. 2:20-CV-02236-CSD, 2022 WL 716810, at *7 (D. Nev. Mar. 10, 2022) (rejecting plaintiff's argument regarding *Free Enterprise*, raised for the first time in a reply). Defendant was not provided an opportunity to respond to this novel, legally distinct argument.

## IV.  CONCLUSION

Accordingly,

**IT IS ORDERED** that the February 24, 2020, decision of the ALJ (R. at 25–41) is **affirmed**. The Clerk of Court is directed to enter judgment consistent with this Order and close this case.

Dated this 19th day of April, 2022.

Michael T. Liburdi
United States District Judge